**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT PEARSON, | |
| Plaintiff, | Case Action No. 7:22-cv-09278 (PMH) |
| -against- | |
| ORANGE COUNTY and SGT. GESSNER, | |
| Defendants. | |

## <u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Raina Duggirala
Alexander J. Potcovaru
Max Gould
Hilda A. Obeng
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000

Facsimile: (212) 836-8689
raina.duggirala@arnoldporter.com
max.gould@arnoldporter.com
alex.potcovaru@arnoldporter.com
hilda.obeng@arnoldporter.com

*Attorneys for Plaintiff*

Stephanie Midler
Assistant County Attorney
Kellie E. Lagitch
Chief Assistant County Attorney
255-275 Main Street
Goshen, New York 10924
(845) 291-3150 [Tel]
(845) 378-2374 [Fax]
smidler@orangecountygov.com
klagitch@orangecountygov.com

*Attorneys for Defendants*

## PLAINTIFF'S PROPOSED FINDINGS OF FACT

The following are Plaintiff Robert Pearson's ("Plaintiff") proposed findings of fact with citations to the proffered trial testimony and exhibits:

### I.    Parties

1.    Plaintiff Robert Pearson is an individual incarcerated within the New York State DOCCS system and resides at 135 State Street, Auburn, NY 13024.

**Defendants' Response:** Admit.

2.    Defendants are Orange County and Sgt. Gessner (now "Lt. Gessner," together with Orange County, "Defendants"). Sgt. Gessner's place of business is located at 110 Wells Farm Road, Goshen, New York 10924.

**Defendants' Response:** Admit.

### II.    Procedural Background

**3.**    On October 28, 2022, Plaintiff, proceeding *pro se*, filed the Complaint in this action alleging retaliation pursuant to 42 U.S.C §1983. *See* Pl. Ex. 21.

**Defendants' Response:** Admit.

**4.**    On January 27, 2023, Defendants filed an Answer to the Complaint. *See* ECF 22.

**Defendants' Response:** Admit.

### III.    The Filing of the Excessive Force Lawsuit

**5.**    On June 28, 2021, Plaintiff Robert Pearson (hereinafter "Mr. Pearson") filed a lawsuit against "O.C.J. Medical Department of Orange County Jail," alleging that OCCF employees improperly used force against him by spraying Mr. Pearson in the eye with pepper spray and subsequently depriving him of water to wash his eye. *See* Joint Ex. 1 (Complaint, *Pearson v. New York State et al.*, No. 7:21-cv-05670-PMH (June 28, 2021)).

2

**Defendants' Response:** Admit only that a lawsuit was filed by Plaintiff Robert Pearson on June 28, 2021 and captioned as *Pearson v. New York State et al.*, No. 7:21-cv-05670-PMH; deny all other findings related to said document for purposes of a finding of fact at this trial pursuant to FRE 401, FRE 402 or FRE 403; deny the credibility of any unfounded allegations of any document containing allegations in a separate action; deny Plaintiff's characterization of the contents of the cited document. Plaintiff is improperly attempting to resolve an issue of fact in another pending litigation.

6.      On September 7, 2021, Mr. Pearson filed an Amended Complaint naming Sgt. Gessner, Officer Morris, and two other OCCF personnel as defendants (hereinafter "Excessive Force Defendants"). *See* Joint Ex. 2 (Amended Complaint, *Pearson v. New York State et al.*, No. 7:21-cv-05670-PMH (Sept. 7, 2021)).

**Defendants' Response:** Admit only that Plaintiff Robert Pearson filed an Amended Complaint in *Pearson v. New York State et al.*, No. 7:21-cv-05670-PMH and that Sgt. Nicholas Gessner was a named defendant therein; deny all other findings all other findings related to said document for purposes of a finding of fact at this trial pursuant to FRE 401, FRE 403 or FRE 403; deny the credibility of any unfounded allegations of any document containing allegations in a separate action; deny Plaintiff's characterization of the contents of the cited document. Plaintiff is improperly attempting to resolve an issue of fact in another pending litigation.

7.      The excessive force lawsuit is still active and pending resolution. *See generally Pearson v. New York State et al.,* No. 7:21-cv-05670-PMH.

**Defendants' Response: A**dmit only that *Pearson v. New York State et al.,* No. 7:21-cv-05670-PMH remains an active federal docket and deny all other findings and/or characterizations by

Plaintiff; deny all findings for purposes of a finding of fact in this trial pursuant to FRE 401, FRE 403 and FRE 403.

## IV.    **Mr. Pearson's Nomination to Trustee Status**

**8.**    Mr. Pearson was incarcerated at OCCF between May 2022 and November 2022. Pearson Aff. ¶ 2. During this period of incarceration, Lt. Gessner was a Sergeant at OCCF. *Id.* ¶ 3.

**Defendants' Response:**  Admit.

**9.**    OCCF permits certain inmates to work as trustees in the facility. There are three types of trustees; Facility Trustee, Wing Trustee, and Housing Unit Trustee. *See* Joint Ex. 13.

**Defendants' Response:** Admit that such information is contained within OCCF Trustee Policy; deny as other nomenclature is used to describe trustees at OCCF. See Joint Exhibit 5; Joint Exhibit 13. Deny all other findings and/or characterizations by Plaintiff.

**10.**    Both the process for appointing inmates to trustee positions and the necessary qualifications for inmates to hold trustee positions are governed by the Trustee Selection/Program General Policy of the Orange County Sheriff's Office. *See* Joint Ex. 13.

**Defendants' Response:** Admit that the OCCF Trustee Policy contains such information but deny to the extent that this policy is the only one governing the trustee program at OCCF. See Affidavit of Lt. Nicholas Gessner dated August 27, 2025 (hereinafter "Gessner Aff." at ¶¶ 9-14; Defendants Exhibit T; Joint Exhibit 13.  Deny all other findings and/or characterizations by Plaintiff.

**11.**    The Trustee Selection/Program General Policy lists "exclusionary factors" that prevent inmates from being considered for placement in trustee status. See Joint Ex. 13.

**Defendants' Response:** Admit that the OCCF Trustee Policy generally contains such information but deny as there are exceptions based on an override procedure to the OCCF Trustee

Selection/Program General Policy that would allow an inmate that is ordinarily disqualified to achieve trustee status. See Gessner Aff. at ¶¶ 9-15; Defendants' Exhibit T; Joint Exhibit 13. Deny all other findings and/or characterizations by Plaintiff.

12.     Mr. Pearson was approved for trustee status on June 13, 2022. *See* Joint Ex. 5. Sgt. Nehrkorn was a B-wing sergeant who requested Mr. Pearson's appointment to trustee status. *Id.*

**Defendants Response:** Admit that Plaintiff was approved for trustee status on June 13, 2022 and admit that Sgt. Nehrkorn, another B-Wing Housing Sergeant at the subject time, was the Sergeant who submitted Plaintiff's Trustee Request Form during the relevant incarceration period; deny all other findings and characterizations by Plaintiff. See Gessner Aff. at ¶¶ 9-15; Defendants Exhibit T.

13.     Mr. Pearson's excessive force lawsuit was dismissed by the district court on May 13, 2022. *See* Joint Ex. 14. Mr. Pearson filed a notice of appeal to the Second Circuit on May 31, 2022. *See* Pl. Ex. 22.

**Defendants Response:** Admit that the Amended Complaint in *Pearson v. New York State et al.,* No. 7:21-cv-05670-PMH was dismissed on May 13, 2022. Deny all other characterizations and/or findings by Plaintiff.

14.     Throughout the time during which Mr. Pearson was granted trustee status, Officer Morris was OCCF's trustee coordinator and was responsible for overseeing the administration of the trustee program. *See* Pearson Aff. ¶ 12.

**Defendants Response:** Admit that this was a function of the trustee coordinator but deny that this was the only function of duties related to this position. See Affidavit of Michael Morris dated August 27, 2025 at ¶ 3; Joint Exhibit 13. Deny all other characterizations and/or findings by Plaintiff.

15.     After Sgt. Nehrkorn's request for Mr. Pearson's trustee status was approved, Lt. Gessner requested that Officer Morris add Mr. Pearson to the trustee payroll for B-4 housing unit. Joint Ex. 6.

**Defendants Response:** Admit but deny Plaintiff's characterization that the request was by Sgt. Nehrkorn other than him signing off on the Trustee Request Form. See Gessner Aff. at ¶¶ 9-15; Defendants Exhibit T.

### V.     Mr. Pearson's Trustee Positions

16.     Over the course of two months, Mr. Pearson was assigned four housing unit trustee positions. In a matter of two weeks, Lt. Gessner removed him from all four positions. *See* Joint Exs. 5-10, 15-18.

**Defendants' Response:** Deny. Plaintiff was added to the payroll list and began working as a trustee in the B-4 housing unit on July 1, 2022. Plaintiff's first trustee job was removed on September 21, 2022 and he became ineligible for his final remaining trustee job on October 6, 2022. See Joint Exhibits 5-10, 15-18,; Defendants Exhibit B.

17.     On June 29, 2022, Lt. Gessner requested that Officer Morris add Mr. Pearson to two Housing Unit Trustee positions, housing unit cleaning and shower detail. *See* Joint Ex. 6.

**Defendants' Response:** Admit but deny Plaintiff's characterization of the cited documents.

18.     On July 20, 2022, Lt. Gessner requested that Officer Morris add Mr. Pearson to a third housing unit trustee position, floor detail trustee. *See* Joint Ex. 7.

**Defendants' Response:** Admit but deny Plaintiff's characterization of the cited documents.

19.     On August 22, 2022, Lt. Gessner requested that Officer Morris add Mr. Pearson to a fourth housing unit trustee position, paint detail. *See* Joint Ex. 8.

**Defendants' Response:** Admit but deny Plaintiff's characterization of the cited documents.

20.     Throughout the course of holding these trustee positions, Mr. Pearson performed all assigned duties in these positions to the best of his ability and completed his work without incident. Pearson Aff. ¶ 13; *see also* Joint Ex. 7. Working as a trustee was beneficial to Mr. Pearson's overall wellbeing and mental health. Pearson Aff. ¶ 13.

**Defendants' Response:** Deny all findings as unsupported by any admissible and/or credible evidence and deny Plaintiff's characterization of the cited documents.

21.     On August 25, 2022, Mr. Pearson filed a motion for relief from cruel and unusual punishment in the Second Circuit. Pearson Aff. ¶ 14. On August 31, 2022, Mr. Pearson filed a motion to proceed in forma pauperis in the Second Circuit. *Id.*

**Defendants' Response:** Deny and object as Plaintiff impermissibly references documents that he is not proposing to be an exhibit at trial as required by Judge Halpern's Individual Part Rule 6(B)(ii); deny the credibility of any unfounded allegations of any referenced document containing allegations in a separate action and deny Plaintiff's characterization of the contents of the referenced document; deny as the referenced documents are not in admissible form since the Second Circuit never ruled upon or decided same and same was not disclosed by Plaintiff during discovery as required by FRCP 26 & 37; deny all findings for purposes of a finding of fact in this trial pursuant to FRE 401, FRE 403 and FRE 403.

22.     Despite Mr. Pearson's satisfactory performance, and the positive impact on Mr. Pearson from having the trustee positions, on September 21, 2022, Lt. Gessner removed Mr. Pearson from his shower unit detail. *See* Joint Ex. 9; Pearson Aff. ¶ 15.

**Defendants' Response:** Admit that on September 21, 2022, Lt. Gessner removed Plaintiff from his shower detail trustee position; deny all other findings as mischaracterizations by Plaintiff not otherwise supported by the record.

**23.**     On September 22, 2022, the supplementary papers to Mr. Pearson's motion for relief from cruel and unusual punishment that he mailed on September 18, 2022 were entered on the Court's docket. Pearson Aff. ¶ 16.

**Defendants' Response:** Deny and object as Plaintiff impermissibly references documents that he is not proposing to be an exhibit at trial as required by Judge Halpern's Individual Part Rule 6(B)(ii); deny the credibility of any unfounded allegations of any referenced document containing allegations in a separate action and deny Plaintiff's characterization of the contents of the referenced document; deny as the referenced documents are not in admissible form since the Second Circuit never ruled upon or decided same and same was not disclosed by Plaintiff during discovery as required by FRCP 26 & 37; deny all findings for purposes of a finding of fact in this trial pursuant to FRE 401, FRE 403 and FRE 403.

**24.**     A few days later, on September 24, 2022, Lt. Gessner removed Mr. Pearson from his floor detail trustee position. *See* Joint Ex. 10.

**Defendants' Response:**  Admit but deny Plaintiff's characterization of the cited documents.

**25.**     After his second position was removed, Mr. Pearson asked Lt. Gessner why he was removing Mr. Pearson from the trustee positions. Lt. Gessner said that he was taking away the trustee positions because Mr. Pearson was suing him in federal court and that  Mr. Pearson was "acting like a little girl" by suing him for excessive force. *See* Pearson Aff. ¶ 18. Lt. Gessner would come to the housing unit and call Mr. Pearson "princess" and "little girl" in reference to Mr. Pearson maintaining his excessive force lawsuit. *See id.* ¶¶ 18-19. Lt. Gessner would refer to Mr. Pearson as "princess" or "little girl" every time Lt. Gessner entered the housing unit. *Id.* ¶ 19.

**Defendants' Response:** Deny all findings as substantively false and unsupported by any admissible and/or credible evidence. See Gessner Aff. at ¶¶ 1-40.

8

26.    On October 2, 2022, Lt. Gessner removed Mr. Pearson from his housing unit cleaning position. *See* Joint Ex. 15.

**Defendants' Response:** Admit but deny Plaintiff's characterizations of the cited documents.

27.    On October 6, 2022, Lt. Gessner removed Mr. Pearson from his last remaining trustee position, the paint detail position. *See* Joint Ex. 18.

**Defendants' Response:** Deny as a mischaracterization as Plaintiff became ineligible for the paint detail position on October 6, 2022 due to being placed on a one-on-one suicide watch. See Gessner Aff. at ¶ 23; Defendants' Exhibit S.

28.    Lt. Gessner rapidly removed Mr. Pearson from these trustee positions in retaliation for Mr. Pearson maintaining his excessive force lawsuit and appeal. *See* Pearson Aff. ¶¶ 15-21, 28; Joint Exs. 5-10, 15-18.

**Defendants' Response:** Deny all findings as substantively false and unsupported by any admissible and/or credible evidence; deny finding as improperly attempting to resolve the ultimate question of fact for the trier of fact; deny as mischaracterization of the evidence. See Gessner Aff. at ¶¶ 1-40; Joint Exhibit 5-13, 15-18; Defendants Exhibit A-T.

## VI.    <u>Move to the D-2 Housing Wing</u>

29.    On October 9, 2022, Lt. Gessner initiated Mr. Pearson's relocation to the D-2 housing unit. *See* Joint Exhibit 11; *see also* Pearson Aff. ¶¶ 23-25.

**Defendants' Response:** Admit only that Lt. Gessner was listed as the "Requesting Officer" on Plaintiff's Housing Unit Relocation Form but deny that Lt. Gessner himself decided to move Plaintiff to the D2 Housing Unit. See Gessner Aff. at ¶¶ 23-33; Defendants Exhibit I; Joint Exhibit 11. Deny all other findings and/or characterizations by Plaintiff.

30.     Mr. Pearson had previously been housed in the D-2 housing unit, and explained to Lt. Gessner that there were multiple inmates in that unit who had tried to harm him. Lt. Gessner responded that he did not care about that. When Mr. Pearson asked why he was being moved, Lt. Gessner replied that Mr. Pearson was acting like a "little girl" by maintaining the excessive force lawsuit against him, and that he didn't want Mr. Pearson in his wing any longer. Mr. Pearson told Lt. Gessner moving him to the D-2 housing unit would put him in danger. *See* Pearson Aff. ¶¶ 23-24.

**Defendants' Response:** Deny findings as substantively false and unsupported by any admissible and/or credible evidence. See Gessner Aff. at ¶ 30-37; Defendants Exhibit O.

31.     Lt. Gessner was already aware that Mr. Pearson had concerns about his safety in the D-2 housing unit. On July 26, 2022, Lt. Gessner wrote a memorandum responding to allegations by Mr. Pearson that he believed other inmates in the D-2 housing unit thought he was a rat and that they tried to harm him as a result. *See* Joint Ex. 20.

**Defendants' Response:** Deny findings as substantively false and unsupported by any admissible and/or credible evidence. See Gessner Aff. at ¶¶ 35; Joint Exhibit 3.

32.     On October 9, 2022, the very same day that Mr. Pearson was moved to the D-2 housing unit, another inmate approached and assaulted Mr. Pearson, striking him in the face. *See* Pl. Exs. 46-49; Pearson Aff. ¶¶ 25-26. During the assault, the inmate referred to Mr. Pearson as a "rat." *See* Pearson Aff. ¶ 26.

**Defendants' Response:** Deny findings as substantively false and unsupported by any admissible and/or credible evidence. See Gessner Aff. at ¶¶ 37; Defendants Exhibit Q; deny pursuant to FRE 401, 402 or 403 and further deny as the video does not depict the claimed allegations and is without sound.

**33.**     Mr. Pearson was later informed by other inmates that members of the OCCF staff, including Lt. Gessner, were telling inmates that Mr. Pearson was a "rat." *See* Pearson Aff. ¶ 29.

**Defendants' Response:** Deny findings as substantively false and unsupported by any admissible and/or credible evidence. See Gessner Aff. at ¶¶ 36-37; Defendants Exhibit Q.

## PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW

### VII.    Jurisdiction and Venue

**34.**     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 as Plaintiff asserts claims under the United States Constitution and 42 U.S.C. § 1983. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in this District and Defendants reside here.

**Defendants' Response:** Deny as the Court lacks subject matter jurisdiction in this case since Plaintiff failed to exhaust his administrative remedies prior to commencing the instant lawsuit as is required by the Prison Litigation Reform Act of 1995.

### VIII.    Standard of Review

**35.**     To prevail on their claims, the parties are required to present evidence in support of the allegations set forth in [their respective] Complaint[s] (as narrowed or focused in summation), and to prove those allegations by a preponderance of the evidence. *Korean Am. Ass'n of Greater N.Y., Inc. v. Min,* No. 17-cv-6857 (RJS), 2020 WL 57839, at *1 (S.D.N.Y. Jan. 6, 2020) (citing *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

**Defendants' Response:** Admit only to the general rule of law cited and respectfully refer to the Court for a ruling as to the applicable law in this case.

**36.**    "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Id.* (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (internal quotation marks omitted)).

**Defendants' Response:** Admit only to the general rule of law cited and respectfully refer to the Court for a ruling as to the applicable law in this case.

**37.**    As the finder of fact, the Court is entitled to make credibility findings as to the witnesses and their testimony. *Id.* (citing *Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 95 (2d Cir. 2012)).

**Defendants' Response:** Admit only to the general rule of law cited and respectfully refer to the Court for a ruling as to the applicable law in this case.

## IX.    <u>Claim Under 42. U.S.C. § 1983</u>

**38.**    This is a claim for deprivation of Mr. Pearson's right under 42 U.S.C. § 1983.

**Defendants' Response:** Admit that these are the allegations of the operative complaint, but deny Plaintiff is entitled to any relief sought therein.

**39.**    To state a claim under 42 U.S.C. § 1983, a civil remedy for deprivation of constitutional rights, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 88 (2d Cir. 2015) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

**Defendants' Response:** Admit only to the general rule of law cited and respectfully refer to the Court for a ruling as to the applicable law in this case.

**40.**     Lt. Gessner is a prison official at OCCF and held this position at all times relevant to this matter. He was therefore acting under color of state law, thereby satisfying the first requirement of the statute. *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 88 (2d Cir. 2015) ("A state employee acting in his official capacity is acting 'under color of state law.'").

**Defendants' Response:** Admit only to the extent that Lt. Gessner is a County actor and thus acting under color of state law for purposes of this action; respectfully refer to the Court for a ruling as to the applicable law in this case.

**41.**     Defendants, acting as state officials, deprived Mr. Pearson of his right to free speech as protected by the First Amendment, by retaliating against his protected conduct. *See id.*

**Defendants Response:** Deny. There is only one defendant and thus only Lt. Gessner in the singular would be acting under color of law. The County of Orange is not a state actor or state official and Plaintiff has demonstrated an evidentiary failure in extending municipal liability to the County pursuant to Monell and its progeny. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690-91 (1978)

## X.     First Amendment Retaliation

**42.**     To establish a First Amendment retaliation claim, a Plaintiff must show that "(1) that the speech or conduct at issue is protected, (2) that the defendant took adverse action against plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action" *Davis v. Goord,* 320 F.3d 346. 352 (2d Cir. 2003).

**Defendants' Response:** Admit.

**43.**     The First Amendment protects the right to speak freely and the right to petition the government, including filing lawsuits to redress grievances. *See McSweeney v. Cohen,* 776 F.

Supp. 3d 200, 254 (S.D.N.Y. 2025) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 519 (1972)).

**Defendants' Response:** Deny as to relevancy but respectfully refer to the Court for a ruling as to the applicable law in this case.

44.    Mr. Pearson engaged in a constitutionally protected conduct by exercising his fundamental right to access the courts by filing the Excessive Force Lawsuit.  Mr. Pearson's right to petition the government for a redress of grievances is secured by the First Amendment to the Constitution. *See Espinal v. Goord,* 558 F.3d 119, 128–29 (2d Cir. 2009) (filing a lawsuit is a protected activity).

**Defendants' Response:** Admit that filing a lawsuit it a protected First Amendment activity and respectfully refer to the Court for a ruling as to the applicable law in this case.

45.    Lt. Gessner's took adverse action against Mr. Pearson by revoking  Mr. Pearson's trustee positions, moving him to a housing unit that posed a risk of harm to Mr. Pearson, and using derogatory names towards Mr. Pearson. Such retaliatory measures would deter a person of ordinary firmness from exercising her First Amendment right to petition the courts. *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003). A combination of small incidents can form the basis of a constitutional claim once reaching a critical mass sufficient to chill the exercise of First Amendment rights. *See Tripathy v. McKoy,* 103 F.4th 106, 118 (2d Cir. 2024).

**Defendants' Response:** Deny. Lt. Gessner did not take any adverse action against Plaintiff because of his 2021 lawsuit and Plaintiff fails to meet his burden for establishing retaliation under the First Amendment. Nevertheless, the record establishes that there were legitimate non-discriminatory reasons for removal of Plaintiff from his trustee positions and his transfer to the D2 Housing Unit, and that these actions would have occurred regardless of the filing of the 2021

14

lawsuit. Deny any allegations of name calling, but nevertheless submit that same is not actionable as a matter of law.

46.     Lt. Gessner took these adverse actions against Mr. Pearson with the knowledge of and as a result of Mr. Pearson maintaining the Excessive Force Lawsuit through his appeal. This causal connection is evidenced by the timing of the events, by documentary evidence, and by Defendant's own statements and actions. Lt. Gessner claims that he removed Mr. Pearson from his trustee positions due to budgetary concerns; however, documentary evidence demonstrates that Mr. Pearson's removal did not reduce the trustee payroll budget and that another inmate was added to trustee positions concurrent with Mr. Pearson's removal.  With respect to moving Mr. Pearson to D-2 unit, Mr. Pearson asked why he was being moved, Lt. Gessner replied that Mr. Pearson was acting like a "little girl" by maintaining the Excessive Force Lawsuit against him.

**Defendants' Response:** Deny. Lt. Gessner did not take any adverse action against Plaintiff because of his 2021 lawsuit and Plaintiff fails to meet his burden for establishing retaliation under the First Amendment. Nevertheless, the record establishes that there were legitimate non-discriminatory reasons for removal of Plaintiff from his trustee positions and his transfer to the D2 Housing Unit, and that these actions would have occurred regardless of the filing of the 2021 lawsuit. Deny any allegations of name calling, but nevertheless submit that same is not actionable as a matter of law.

47. Plaintiff respectfully submits that he has met his burden of proof.

**Defendants' Response:** Deny that Plaintiff has met his burden of proof and the Court is respectfully directed to Defendants Proposed Findings of Fact and Conclusions of Law for all the reasons therefore.

**DAMAGES**

**XI.    Robert Pearson Suffered Damages as a Result of Defendant's Actions**

48.    Mr. Pearson is entitled to damages for his past and future non-economic losses, including without limitation, his past and future pain and suffering, and mental and emotional distress.

**Defendants' Response:** Defendants deny Plaintiff is entitled to any relief sought. Plaintiff has not proffered any admissible evidence of any injury to recover same.

49.    Mr. Pearson is entitled to damages for his lost wages totaling between $280 and $420, which reflects weekly payments of $35 per week over a period of 8-12 weeks of lost employment.

**Defendants' Response:** Defendants deny Plaintiff is entitled to any relief sought.

50.    Mr. Pearson is entitled to statutory damages permitted by 42 U.S.C. § 1983, including without limitation, reasonable attorney's fees and litigation costs in such amount as a court or jury may award.

**Defendants' Response:** Defendants deny Plaintiff is entitled to any relief sought.

51.    Mr. Pearson is entitled to punitive damages to the extent permitted by law.

**Defendants' Response:** Defendants deny Plaintiff is entitled to any relief sought. Plaintiff failed to plead recovery of any punitive damages.  Punitive damages are not recoverable in this case. *See Ciraolo v. City of New York*, 216 F.3d 236 (2d Cir. 2000); *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997).

## CONCLUSION

**52.**    For the reasons set forth above, Plaintiff respectfully request that the Court enter a judgment in favor of the Plaintiff against both Defendants, awarding damages and other relief.

**Defendants' Response:** Deny that Plaintiff is entitled to the request sought and the Court is respectfully direct to Defendants Proposed Findings of Fact and Conclusions of Law for all the reasons therefore.

Dated: September 12, 2025

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

Raina Duggirala
Alexander J. Potcovaru
Max Gould
Hilda A. Obeng
250 West 55th Street
New York, New York 10019
Tel.: (212) 836-8000
raina.duggirala@arnoldporter.com
alex.potcovaru@arnoldporter.com
max.gould@arnoldporter.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
-----ROBERT PEARSON,                                      :
                                                          :   22-CV-09278 (PMH)
                                    Plaintiff,            :
                                                          :   **DEFENDANTS**
                     - against -                          :   **PROPOSED FINDINGS OF FACT**
                                                          :   **& CONCLUSIONS OF LAW**
ORANGE COUNTY AND SERGEANT GESSNER        :
                                                          :
                                    Defendants.           :
------------------------------------------------------------------------ X

Pursuant to this Court's Order and Rule 6 of the Individual Rules of Practice of Judge Philip

Halpern, the following is offered by the Defendants as their Proposed Findings of Fact and

Conclusions of Law:

## PROPOSED FINDINGS OF FACT

### a. Procedural History

1. On June 28, 2021, Plaintiff Robert Pearson (hereinafter "Plaintiff" or "Pearson") filed a

   lawsuit against "O.C.J. Medical Department of Orange County Jail" of which the

   underlying facts involved a use of force incident. *See* Joint Exhibit 1. The Docket number

   for this first lawsuit is 21-cv-05670.

   **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

2. Plaintiff eventually filed an Amended Complaint on September 7, 2021, which specifically

   named Sergeant Gessner as a defendant. *See* Joint Exhibit 2.

   **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

3. Sgt. Gessner became aware of the Plaintiff's first lawsuit against him around September

   24, 2021, which is when he submitted his Request for Defense & Indemnification to the

   Orange County Attorney's Office. *See* Joint Exhibit 4.

   **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

18

4.  The Hon. Philip M. Halpern dismissed the aforementioned amended complaint by way of Memorandum Opinion and Order dated May 13, 2022. *See* Joint Exhibit 14.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

5.  A Judgement followed dated May 16, 2022. *See* Joint Exhibit 3.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

6.  On or around May 14, 2022, Sgt. Gessner became aware that Plaintiff's 2021 lawsuit against him was dismissed. *See* Defendants' Exhibit M; Affidavit of Lt. Gessner dated August 27, 2025 at ¶¶ 5-8 (hereinafter "Gessner Aff.").

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

7.  Plaintiff's 2021 lawsuit against Sgt. Gessner was related to allegations during his incarceration period at Orange County Correctional Facility beginning on April 6, 2021 through September 2, 2021. *See* Defendants' Exhibit N.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

8.  Plaintiff's next incarceration period at OCCF began on October 28, 2021 and lasted until February 16, 2022. *See* Defendants' Exhibit N.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

9.  The allegations of retaliation that are at issue in this case were not until Plaintiff's following incarceration period at OCCF beginning on May 3, 2022 through November 15, 2022. *See* Complaint at ECF Docket No. 1; Defendants' Exhibit N.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

10. At all relevant times, Plaintiff's status remained as a pretrial detainee. *See* Defendants' Exhibit N; Complaint at ECF Docket No. 1.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

11. Plaintiff filed his Notice of Appeal on May 31, 2022 regarding the May 13, 2022 Memorandum Opinion and Order and May 16, 2022 Judgement in the first lawsuit. *See* Joint Exhibits 3 & 14.

   **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

12. Sgt. Gessner was not aware that Plaintiff had filed a Notice of Appeal for Case No. 21-cv-05670 on May 31, 2022. Gessner Aff. at ¶ 8.

   **Plaintiff's Response:** The evidence does not support this proposed fact. Sgt. Gessner was asked whether he was aware, sitting at the deposition, that Mr. Pearson filed his appeal on May 31, 2022, to which Sgt. Gessner responded that he was not aware. *See* Deposition of Nicholas Gessner ("Gessner Dep.") 66:17-22. Sgt. Gessner did not testify whether he was aware of Mr. Pearson's appeal at the time it was filed. *See id.*

13. On October 28, 2022, Plaintiff filed the Complaint for this Case No. 7:22-cv-09278 naming "O.C.J. Jail" and Sgt. Gessner as Defendants. *See* Complaint at ECF Docket No. 1. Defendant "O.C.J. Jail" was substituted for Orange County by Order of Service entered November 28, 2022. See Order of Service dated November 28, 2022 at ECF Docket No. 9.

   **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

b. **Trustee Program & Plaintiff's Trustee Positions**

14. A trustee is a paid position within OCCF that an inmate must have special clearance and approval to be assigned to. *See* Joint Exhibit 13. The purpose of a trustee position is to perform various tasks and jobs to maintain and clean OCCF. *Id*. Trustees are paid for their work, and the hourly pay varies based on the type of position. *Id*. Factors considered by classifications when deciding whether to approve someone for trustee status includes: (i)

20

convictions of any sex crimes; (ii) contraband risk; (iii) escape risk; (iv) conviction of a felony such as first-degree arson or first-degree robbery. *Id*. Other factors disqualifying an inmate from becoming a trustee include the inmate's disciplinary history or if they were not cleared by medical and mental health. *Id*.

**Plaintiff's Response:** The evidence contradicts this proposed fact in part. Classifications does not provide clearance, but rather reviews an inmate's incarceration record and other factors to make findings that are forwarded to the trustee coordinator. *See* Joint Ex. 13; Morris Dep. 33:24-34:23; 35:25-36:5; 37:3-22. The trustee coordinator is ultimately responsible for selecting inmates as trustees, and must coordinate with Classification to ensure inmates are meeting the necessary requirements. Joint Ex. 13; Morris Dep. 37:3-22. The trustee coordinator either approves or disapproves of an inmate after Classification review. *See* Joint Ex. 13. The relevant OCCF Trustee Program policy does not state a purpose of the trustee positions. *See* Joint Ex. 13; *see also* Morris Dep. 12:11-24. Further, the role of "mental health" is not discussed in the trustee policy as a department with a role in the trustee selection process. *See* Joint Ex. 13.

15. Based on his classifications file, Plaintiff was disqualified or ineligible for a trustee position at OCCF. *See* Joint Exhibit 13; Defendants' Exhibit S. Most recently in late May of 2022, Plaintiff had engaged in repeated instances of disruptive behavior, including instances of refusing orders and destroying OCCF property. *See* Defendants' Exhibit O.

**Plaintiff's Response:** Mr. Pearson objects to this proposed fact as irrelevant to the legal issues in this case and as inadmissible hearsay and character evidence.

16. Plaintiff was moved to the B4 Housing Unit on June 1, 2022. *See* Defendants' Exhibit A.

**Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

21

17. Sgt. Gessner became the Sergeant primarily assigned to oversee the Bravo Wing Housing units for the 7-3 shift sometime during the beginning half of 2022. As part of his duties as Bravo Wing Sergeant, he would request, assign and remove certain trustee positions as well as inmates from trustee status. Gessner Aff. ¶¶ 9, 12-23.

**Plaintiff's Response:** The evidence contradicts this proposed fact regarding Sgt. Gessner's duties. Assigning and removing trustees is not the responsibility of a Corrections Sergeant at OCCF. *See* Pl. Ex. 24 (Orange County Class Specification). A Wing Sergeant cannot remove an inmate from unit trustee status by their own authority, and instead must submit a request to their designated Lieutenant. *See* Joint Ex. 13. The trustee coordinator does not need to follow a Sergeant's order in assigning trustee positions. *See* Morris Dep. at 23:5-8; 24:1-3. Once the Classifications Officer has a list of inmates recommended to work as Unit Trustees, that list is forwarded to the trustee coordinator, not Sergeants. *See* Joint Ex. 13. ; *see also* Morris Dep. at 33:24-34:23.

18. Plaintiff has an extensive disciplinary history. Gessner Aff. at ¶ 9; Exhibit HH. Sgt. Gessner thought it would be beneficial to assign Plaintiff certain trustee positions to help combat the negative outbursts he repeatedly exhibited against OCCF staff. *Id*. In addition, Plaintiff owed money to OCCF due to the numerous disciplinary charges on his account, as inmates get charged $25.00 for each infraction that they are found guilty of. Gessner Aff. at ¶ 11; Exhibit HH. Thus, Sgt. Gessner further thought that a trustee position would be positive motivation for Plaintiff since he could work to pay off some of the balance he owed to the facility and thus eventually have the ability to access commissary again. Gessner Aff. at ¶ 11.

**Plaintiff's Response:** Deny the findings regarding funds purportedly owed by Mr. Pearson to OCCF and Sgt. Gessner's thoughts regarding those funds as unsupported by admissible evidence. Additionally, the evidence shows that Sgt. Gessner removed Mr. Pearson from his Floor Detail position because Mr. Pearson refused to drop his lawsuit against Sgt. Gessner, which is inconsistent with the motivation for assigning the trustee positions that is stated in this proposed fact. *See* Pearson Aff. ¶¶ 18-19, 29.

19. After a few weeks of exhibiting more acceptable behavior, Sgt. Gessner had staff approach Plaintiff about becoming a trustee. Gessner Aff. at ¶¶ 10-14. Plaintiff expressed interest in doing so. Despite knowing of Plaintiff's extensive disciplinary history, Sgt. Gessner decided to initiate an override that would nevertheless allow Plaintiff to have a trustee position in an effort to reward him and have him continue his good behavior. Gessner Aff. ¶¶ 9-14; *see* Joint Exhibit 13. In order to obtain the override, Sgt. Gessner had to confirm that preliminary clearance was received from medical/mental health, and further receive clearance from a Captain. Gessner Aff. ¶ 13; *see* Defendants' Exhibit T.

**Plaintiff's Response:** The proposed fact requires clarification. The evidence shows Mr. Pearson began exhibiting some positive changes in behavior in the beginning of June 2022, prior to being approached about a potential trustee position. *See* Gessner Dep. 67:4-21. Further, the evidence contradicts this proposed fact in that the applicable trustee policy does not contain any procedure for a Sergeant to override the trustee selection process. *See* Joint Ex. 13. The evidence establishes that Sgt. Nehrkorn—not Sgt. Gessner—submitted the original request to appoint Plaintiff to a trustee position. *See* Joint Ex. 5; *see also* Gessner Dep. 76:21-79:1. To the extent Sgt. Gessner was involved in Mr. Pearson's approval for trustee status, this involvement was for the purpose of encouraging Mr.

23

Pearson to stop pursuing his lawsuit, *Pearson v. New York State et al.*, No. 21-cv-05670 (PMH) (S.D.N.Y.), against Sgt. Gessner. *See* Pearson Aff. ¶¶ 10-11, 14-19, 29. Further, Sgt. Gessner testified that he would only have to initiate the alleged override after the medical department gives its approval and after classification does not give its approval; the medical department was not a part of the supposed override process. *See* Gessner Dep. at 73:24-74:15. Additionally, to the extent Defendants rely on Exhibit NN, Plaintiff objects to the use of this document at trial under Fed. R. Civ. P. 37.

20. Plaintiff's trustee status was limited to an in-unit trustee only. *See* Exhibit G. Thus, as a trustee, Plaintiff would not be permitted to walk around any other housing units but his own thereby limiting his security risk. Gessner Aff. ¶ 12.

    **Plaintiff's Response:** The evidence contradicts this proposed fact. Plaintiff was approved to be a Housing Unit Trustee. *See* Joint Ex. 5. An "in-unit" trustee is not a type of trustee recognized by the relevant OCCF trustee policies. *See* Joint Ex. 13. Further, Sgt. Gessner testified that he did not "know the exact reason why" Mr. Pearson was given his particular trustee status but said that other inmates might be given this status to limit security risk. *See* Gessner Dep. at 71:22-72:4.

21. A Trustee Request Form for Robert Pearson to become a housing unit trustee for the B-4 housing unit was granted by classifications on June 13, 2022. Gessner Aff. at ¶ 14; *see* Exhibit G. Sgt. Gessner approved adding Plaintiff to the B-4 housing unit payroll for two (2) jobs: Housing Unit Cleaning trustee and Shower Detail trustee. Gessner Aff. at ¶ 15; *see* Joint Exhibit 6; *see also* Affidavit of Michael Morris dated August 27, 2025 ("Morris Aff.") at ¶ 6. Plaintiff was officially added to the payroll list and began to work in these two positions on July 1, 2022. *See* Joint Exhibit 16.

**Plaintiff's Response:** The evidence contradicts this proposed fact in part. Sergeant Nehrkorn—not Sgt. Gessner—submitted the original request to appoint Plaintiff to a trustee position and directed Officer Morris via email on June 12, 2022 to assign Mr. Pearson the Shower Detail trustee position. *See* Pl. Exs. 31, 45; *see also* Joint Ex. 5; Gessner Dep. 76:21-79:1.

22. On July 20, 2022, Sgt. Gessner decided to give Plaintiff an additional job as Floor Detail trustee due to his satisfactory performance. Gessner Aff. at ¶ 16; Morris Aff. at ¶ 7; *see* Joint Exhibit 7. Pearson began working in this position on July 29, 2022. *See* Joint Exhibit 16.

**Plaintiff's Response:** The evidence contradicts this proposed fact regarding Lt. Gessner's motivation or justification for giving Mr. Pearson an additional job. Lt. Gessner could not recall the purported positive effect on Mr. Pearson's behavior from Mr. Pearson's first two jobs. *See* Gessner Dep. 89:7-19, 90:19-24. Lt. Gessner also did not communicate anything further about this purported observation to Officer Morris beyond a cursory email on July 20, 2022. *See* Morris Dep. 63:13-64:11; *see also* Joint Ex. 7; Morris Dep. 58:16-59:17; 60:4-9; 65:13-67:1;.

23. On August 22, 2022, Sgt. Gessner decided to give Plaintiff an additional job as a Paint Detail trustee due to his continued satisfactory performance. Gessner Aff. at ¶ 17; Morris Aff. at ¶ 8; *see* Joint Exhibit 8. Plaintiff began working in this position on August 26, 2022. *See* Joint Exhibit 16.

**Plaintiff's Response:** The evidence contradicts this proposed fact regarding Lt. Gessner's belief that the positions were helping Plaintiff and as to whether this was Sgt. Gessner's motivation and/or justification for adding Mr. Pearson to the paint detail. *See* Morris Dep.

58:16-59:17; 60:4-9; 65:13-67:1; s*ee also* Joint Ex. 8.. To the extent Lt. Gessner was involved in the approval of Mr. Pearson for additional trustee positions, this involvement was for the purpose of encouraging Mr. Pearson to stop pursuing his lawsuit, *Pearson v. New York State et al.*, No. 21-cv-05670 (PMH) (S.D.N.Y.), against Sgt. Gessner. *See* Pearson Aff. ¶¶ 10-11, 14-19, 29.

24. Corrections Officer Michael Morris is the Trustee Coordinator at OCCF. Morris Aff. at ¶ 3. Among many of his duties, he is responsible for ensuring that the trustee program remains within acceptable budgetary limits. *Id.* As a general policy, C.O. Morris tries to keep the amount being paid out to trustees between $1,800.00 to $2,000.00 per pay period. Morris Aff. at ¶ 4.

    **Plaintiff's Response:** The evidence does not support the proposed fact regarding "acceptable budgetary limits." Officer Morris was told about the $2,000 figure only a single time in a meeting he attended prior to becoming trustee coordinator; Officer Morris never received additional communication about this budget figure; and there is no discussion of budget in the OCCF Trustee Policy. *See* Morris Dep. 19:13-21:18; 72:1-4; 72:8-73:3; 73:21-74:4; Def. Ex. O.

25. The Trustee Program Payroll list for September 10, 2022 through September 16, 2022 indicated an amount being paid to the trustees that was over budget, *i.e.*, $2,059.00 or $59.00 over budget. Morris Aff. at ¶ 9; *see* Joint Exhibit 17. Officer Morris communicated with various Sergeants, including Sgt. Gessner, that reductions in the number of trustee positions would need to be made. Gessner Aff. at ¶ 18; Morris Aff. at ¶ 10. Based thereon, Sgt. Gessner decided to consolidate some of the "detail" trustee positions into the Housing Unit Cleaning trustee position. Morris Aff. at ¶¶ 11-13; Gessner Aff. at ¶¶ 18-19.

Therefore, Sgt. Gessner removed Plaintiff and Inmate Luis Aguilar Guerra from their B4 Unit Shower Detail trustee position on September 21, 2022. *Id*.; *see* Joint Exhibits 9 & 16. **Plaintiff's Response:** The evidence does not support the proposed fact. First, the evidence does not show that $2,059 was "over budget." Officer Morris was told about the $2,000 figure only a single time in a meeting he attended prior to becoming trustee coordinator; Officer Morris never received additional communication about this budget figure; and there is no discussion of budget in the OCCF Trustee Policy. *See* Morris Dep. 19:13-21:18; 72:1-4; 72:8-73:3; 73:21-74:4; Def. Ex. O. Second, Officer Morris did not recall the method by which he purportedly communicated this information to colleagues (whether in-person or via electronic communication); to whom he may have individually communicated this information; the method by which he purportedly communicated with Sgt. Gessner about this topic; or any details about the purported response from Sgt. Gessner at that time. *See* Morris Dep. 74:4-19; 74:25-75:3; 75:4-76:9. Third, Officer Morris purportedly distinguished between reducing the total spend for trustee work and reducing the number of trustee positions. *See* Morris Dep. at 80:8-80:25. Fourth, the evidence does not support the proposed fact regarding Sgt. Gessner's motivation for consolidating the positions. *See* Gessner Dep. 97:1-3, 101:20-102:4, 102:5-22, 103:4-20, 103:21-104:6, 104:19-24. Additionally, Sgt. Gessner had never altered, consolidated or removed trustee positions due to budgetary concerns in the past. *See* Gessner Dep. 97:1-3; 104:2-6; 105:16-19. Sgt. Gessner removed Mr. Pearson from the B-4 Unit Shower Detail position because Mr. Pearson refused to drop his lawsuit against Sgt. Gessner. *See, e.g.*, Pearson Aff. ¶¶ 10-11, 14-19, 22, 29.

26. To further assist in aiding the budgetary concerns, on September 24, 2022, Sgt. Gessner removed Plaintiff from his B4 Unit Floor Detail trustee position and Inmate Luis Aguilar Guerra from his only remaining position of Meal Server Detail. *Id*.; *see* Joint Exhibits 10 & 16. At this time, Plaintiff still had his Housing Unit Cleaning trustee position, which now encompassed the duties of his past positions as Shower Detail and Floor Detail trustee.

**Plaintiff's Response:** The evidence does not support the proposed fact in regard to Sgt. Gessner's motivation or justification. *See* Gessner Dep. 97:1-3, 101:20-102:4, 102:5-22, 103:4-20, 103:21-104:6, 104:19-24, 105:16-20, 106:19-107:9, 108:18-109:15. Sgt. Gessner removed Mr. Pearson from his Floor Detail position because Mr. Pearson refused to drop his lawsuit against Sgt. Gessner. *See* Pearson Aff. ¶¶ 18-19, 22, 29.

27. Despite these changes, the Trustee Program Payroll Lists for September 24, 2022 through September 30, 2022 indicated an amount of $1,983.00 being paid to the trustees, which was too close to the upper limits of the trustee payroll budget amount. Morris Aff. at ¶ 14; *see* Joint Exhibit 17. C.O. Morris preferred to keep the amount closer to $1,800.00. Morris Aff. at ¶ 14; *see* Joint Exhibit 17. On October 2, 2022, Sgt. Gessner removed Plaintiff from his Housing Unit Cleaning trustee position and Inmate Matthew Mercado from his Floor Detail trustee position to again try and meet the unit's budgetary goals. Morris Aff. at ¶ 15; Gessner Aff. at ¶ 20; *see* Joint Exhibits 15 & 16. He thought it was best to remove Plaintiff because he could nevertheless keep his Paint Detail trustee position, which was separate from cleaning and would not be at risk of being consolidated like the other details. Gessner Aff. at ¶ 20.

**Plaintiff's Response:** The evidence does not support the proposed fact in regard to the purported $2,000 budget. Officer Morris was told about the $2,000 figure only a single

28

time in a meeting he attended prior to becoming trustee coordinator; Officer Morris never received additional communication about this budget figure; and there is no discussion of budget in the OCCF Trustee Policy. *See* Morris Dep. 19:13-21:18; 72:1-4; 72:8-73:3; 73:21-74:4; Joint Ex. 13. Further, the evidence does not support the proposed fact in regard to Sgt. Gessner's motivation or justification for removing Mr. Pearson from his Housing Unit Cleaning position or Mr. Mercado from his Floor Detail position. *See* Gessner Dep. 97:1-3, 101:20-102:4, 102:5-22, 103:4-20, 103:21-104:6, 104:19-24, 105:16-20, 106:19-107:9, 108:18-109:15. Sgt. Gessner removed Mr. Pearson from his Housing Unit Cleaning trustee position because Mr. Pearson refused to drop his lawsuit against Sgt. Gessner. *See* Pearson Aff. ¶¶ 18-20, 22, 29.

28. On October 6, 2022, following an evaluation by a Licensed Mental Health Counselor at OCCF, Plaintiff was placed on Special Watch status as a One-to-One for suicidal behavior. *See* Exhibit S. Based thereon, Sgt. Gessner removed Plaintiff from his remaining trustee position of Paint Detail as he was no longer eligible due to being placed on a One-on-One close/special watch status. Morris Aff. at ¶ 16; Gessner Aff. at ¶¶ 22-23; *see* Joint Exhibit 18.

**Plaintiff's Response:** The evidence contradicts the proposed fact regarding Sgt. Gessner's motivation or justification for removing Mr. Pearson from Paint Detail. *See* Gessner Dep. 97:1-3, 101:20-102:4, 102:5-22, 103:4-20, 103:21-104:6, 104:19-24, 105:16-20, 106:19-107:9, 108:18-109:15. Sgt. Gessner previously assigned Mr. Pearson trustee roles even when Mr. Pearson was ineligible. *See* Gessner Dep. 70:3-71:21; *see also* Defendants' Proposed Findings of Fact ¶ 19 (above). Sgt. Gessner removed Mr. Pearson from his Paint

Detail position because Mr. Pearson refused to drop his lawsuit against Sgt. Gessner. *See* Pearson Aff. ¶¶ 18-22, 28.

29. Plaintiff's prior lawsuit against Sgt. Gessner was not a consideration in Sgt. Gessner's decision to remove him from any of his trustee positions. Gessner Aff. at ¶ 24.

**Plaintiff's Response:** The evidence contradicts the proposed fact. Sgt. Gessner removed Mr. Pearson from trustee positions because Mr. Pearson refused to drop his lawsuit and appeal against Sgt. Gessner. *See* Pearson Aff. ¶¶ 14-22, 29.

c.  **Plaintiff's Housing Unit Relocations**

30. Thereafter, a medical directive ordered that Plaintiff be moved to the Medical-1 Housing Unit for observation and that he be placed in contact isolation. Gessner Aff. at ¶ 5-26; *see* Defendants' Exhibits A, C, D, E and P. Plaintiff's medical records indicate the contact isolation was due to presenting in medical with symptoms of COVID-19. *See* Defendants' Exhibit P.

**Plaintiff's Response:** Plaintiff objects to the use of Exhibit II at trial under Fed. R. Civ. P. 37.

31. On October 7, 2022, Plaintiff was stepped down from a One-to-One Special Watch status to 15-minute Log Supervision. Gessner Aff. at ¶ 27; *see* Exhibit V. On October 8, 2022, Plaintiff was cleared from Special Watch status per a medical directive. *See* Defendants' Exhibit F. While Plaintiff was housed in Medical-1 during this time, he specifically requested to be moved to the B-1 Housing Unit. *See* Defendants' Exhibit P.

**Plaintiff's Response:** The proposed fact that Mr. Pearson requested to be moved to the B-1 Housing Unit is not supported by admissible evidence.

30

32. On October 8, 2022, Plaintiff was moved from the Medical-1 Unit to the B-1 Unit, which is the intake unit at OCCF where inmates are temporarily housed until moved into other units within the facility. Gessner Aff. at ¶ 28; *see* Defendants' Exhibit A. Therefore, although Plaintiff was still in contact isolation, he was placed in a unit with other new inmates, many of which would also be under contact isolation orders.

    **Plaintiff's Response:** There is no evidentiary basis offered for the proposed fact that many new inmates would be under contact isolation orders.

33. On October 8, 2022, while being housed in the B-1 Housing Unit, contraband was found in Plaintiff's cell and an Inmate Misbehavior Report was issued. Gessner Aff. at ¶ 29; *see* Defendants' Exhibit G.

    **Plaintiff's Response:** Plaintiff objects to this fact as irrelevant to the legal issues in this case and as inadmissible hearsay and character evidence.

34. As of October 9, 2022, Plaintiff received all medical clearances from 15 minute close watch and contact isolation. *See* Defendants' Exhibit F & H.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

35. Due to his extensive history of misbehavior reports on file and recent contraband infraction, once Plaintiff was cleared from contact isolation, Plaintiff was moved into the maximum-security unit, which is the D-2 Housing Unit. Gessner Aff. at ¶¶ 30-33; *see* Defendants' Exhibits H, I; Joint Exhibit 11. However, the decision to move Plaintiff to the D-2 Housing Unit was that of the Classifications Unit, not Sgt. Gessner. Gessner Aff. at ¶ 32-33.

    **Plaintiff's Response:** Plaintiff objects to the first sentence as irrelevant to the legal issues in this case and as inadmissible hearsay and character evidence. Further, the evidence

contradicts the second sentence in part, because it shows that Sgt. Gessner initiated the transfer request for Mr. Pearson. *See* Gessner Dep. 164:18-24.

36. On October 9, 2022, Plaintiff was moved to the D-2 Housing Unit. *See* Defendants' Exhibit A.

**Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

37. At the time of the transfer, Plaintiff did not have any "no contact" orders active for the D-2 Housing Unit which would otherwise potentially prohibit the transfer or otherwise signal to the prison officials that they may be creating a potentially dangerous housing arrangement. Gessner Aff. at ¶¶ 34-36; *see* Defendants' Exhibit J.

**Plaintiff's Response:** Defendants do not provide sufficient evidence for the proposed fact that Mr. Pearson lacked any active "no contact" orders for the D-2 Housing Unit at this time, as Exhibit BB shows that there was an active no contact order regarding inmate Michael Dayton, and no evidence has been produced regarding where Mr. Dayton was housed at the time of the incidents at issue in this case. Further, the evidence contradicts the proposed fact that there was no "signal to the prison officials" that moving Mr. Pearson to the D-2 Housing Unit could put him in danger: Mr. Pearson had previously been housed in the D-2 housing unit, and explained to Lt. Gessner that there were multiple inmates in that unit who had tried to harm him and that moving him to the D-2 housing unit would put him in danger. *See* Pearson Aff. ¶¶ 23-24. Lt. Gessner also had been aware for several months that Mr. Pearson had concerns about his safety in the D-2 housing unit, given that on July 26, 2022, Lt. Gessner wrote a memorandum responding to allegations by Mr. Pearson that he believed other inmates in the D-2 housing unit thought he was a rat and that they tried to harm him as a result. *See* Joint Ex. 20.

32

38. Plaintiff's prior lawsuit was not a consideration in Sgt. Gessner's actions of signing off on Plaintiff's move to the D-2 Housing Unit. Gessner Aff. at ¶ 34.

    **Plaintiff's Response:** The evidence taken as a whole contradicts this proposed fact, and Defendants further fail to provide supporting evidence for this claim beyond Sgt. Gessner's affidavit.

39. When Plaintiff moved to the D-2 Housing Unit, Inmate Raiquan Falls initiated an altercation with Plaintiff, which Inmate Falls later confesses was solely to receive medical attention and not otherwise related to Plaintiff. *See* Defendants' Exhibit Q.

    **Plaintiff's Response:** Plaintiff objects to the proposed fact regarding Mr. Falls' purposed "confess[ion]" as inadmissible hearsay. Further, the evidence contradicts the proposed fact regarding the reason for Mr. Falls' assault, given that officers, including Sgt. Gessner, told inmates in D-2 that Mr. Pearson was a "rat" (i.e., an informant to the corrections officers). *See* Pearson Aff. ¶ 27.

### d. **The Grievance Procedure**

40. When Plaintiff entered OCCF on May 3, 2022, he was given a copy of the Inmate Handbook, which included instructions on filing grievances. *See* Joint Exhibit 19.

    **Plaintiff's Response:** No admissible evidence supports this proposed fact. Exhibit F itself indicates that Mr. Pearson "verbally refused" to sign that he had received the handbook and/or had discussed the policies listed in Exhibit F.

41. A grievance is a written inmate complaint concerning written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any employee of the facility. *See* Joint Exhibit 19.

    **Plaintiff's Response:** Mr. Pearson has no response or objection to this proposed fact.

42. Plaintiff never filed any grievances with regard to the conduct complained of in his instant complaint. Affidavit of Eric Colby dated August 27, 2025 (hereafter "Colby Aff.") at ¶¶ 12-17; *see* Defendants' Exhibits L & R.

**Plaintiff's Response:** This proposed fact mischaracterizes the evidence. Mr. Pearson was deprived of the opportunity to file a grievance with regard to the conduct at issue. Plaintiff requested a grievance form but was denied one by multiple staff members at OCCF, and he was told consistently that he did not have an issue subject to the grievance procedure. *See* Pearson Aff. ¶ 28.

43. The grievance merely has to be written, it does not have to be on a facility issued form and the Grievance Coordinator would accept a grievance written on any piece of paper. Colby Aff. at ¶¶ 10-11.

**Plaintiff's Response:** The evidence does not support the proposed fact. Neither in the OCCF Grievance Policy nor in the Inmate Handbook does it state that a grievance may be written on "any piece of paper." *See* Def. Ex. K; Joint Ex. 19. The Grievance Policy states that a grievance form "should be issued" to an inmate if a complaint cannot be resolved informally, and further states that the grievance coordinator, in absence of resolution of a complaint, will "entertain the grievance Form Part 1 previously provided by a sergeant or higher rank." *See* Def. Ex. K. The Inmate Handbook provides that absent resolution of a complaint, "[the inmate] may request and will receive a grievance form by the end of the shift…", *see* Joint Ex. 19, and it does not provide any other way that an inmate can submit a grievance. *See* Deposition of Eric Colby ("Colby Dep.") 87:2-12.

44. Plaintiff knew that he could file a grievance on any piece of paper because he testified that he thought he used that method to file a grievance regarding the allegations in this case.

34

See Transcript for Deposition of Robert Pearson dated March 8, 2024 at p. 166, ln. 21-25, p. 167, ln. 2.

**Plaintiff's Response:** The evidence does not support the proposed fact. Mr. Pearson was denied a grievance form by Sergeants Nehrkorn and Conroy. Pearson Aff. ¶ 28. Additional clarification is necessary and is permitted under the rule of completeness: Mr. Pearson testified that *after* being denied a grievance form, he believes he then "wrote a grievance on a piece of paper and submitted it with the jail or wrote the commissioner's office about this issue, the Commissioner of Corrections." Pearson Dep. 166:21-167:9. Mr. Pearson's testimony does not support Defendants' proposed fact that he "knew" or believed that this was a part of the grievance filing procedure, but rather indicates that it was a last resort after being denied a grievance form and told that his concerns could not be the subject of a grievance. *See* Pearson Aff. ¶ 28.

45. Despite not filing any sort of grievance, Plaintiff commenced this lawsuit by filing the subject Complaint on October 28, 2022 – over 450 days since the initial lawsuit was filed. See Complaint at ECF Docket No. 1.

**Plaintiff's Response:** The proposed fact mischaracterizes Mr. Pearson's failure to file a grievance because it does not reflect the evidence that Mr. Pearson was denied the ability to file such a grievance. *See* Plaintiff's Response to Defendants' Proposed Findings of Fact ¶ 44 (above).

**PROPOSED CONCLUSIONS OF LAW**

**CONCLUSION ONE:**

**The Court lacks subject matter jurisdiction in this case since Plaintiff failed to exhaust his administrative remedies prior to commencing the instant lawsuit as is required by the Prison Litigation Reform Act of 1995.**

1.  The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a); *Moco v Janik*, 22-307-PR, 2023 WL 6632952, at *1 (2d Cir. Oct. 12, 2023), *cert denied,* 24-5636, 2024 WL 4874704 (U.S. Nov. 25, 2024).

    **Plaintiff's Response:** Admit only to the general rule of law cited and respectfully refer to the Court for a ruling as to the applicable law in this case.

2.  The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted).  Prisoners must utilize the facility's grievance procedures regardless of whether the relief sought is actually offered through these procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that exhaustion is required "regardless of the relief offered through administrative procedures.").

    **Plaintiff's Response:** Although generally a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court only after exhausting administrative procedures, *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), here, Plaintiff was thwarted in his attempt to exhaust his administrative remedies when he requested a grievance form from multiple OCCF staff members, yet was denied each time. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶

28. Courts in this Circuit have held that "an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003); *see also Thomas v. New York State DOCS*, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, 2000 WL 274184, at *3 (S.D.N.Y. Mar.13, 2000); *Preslar v. Dr. Tan*, 2003 WL 553273, at *3 (W.D.N.Y. Feb. 6, 2003).

Further, Plaintiff was told repeatedly that removal from his trustee positions and his housing unit transfer were not issues subject to the grievance procedure. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28, Nonexhaustion does not bar a claim "where a plaintiff has been led to believe that administrative remedies were unavailable." *Rivera v. Goord*, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003).

Moreover, the PLRA's exhaustion requirement is an affirmative defense, and Defendants "bear[] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

3. Moreover, "[c]ourts have interpreted the provision to require complete exhaustion in accordance with institutional procedures." *Vazquez v. Parks*, (No. 02 Civ. 1735 (LAK) (HBP)), 2003 WL 1442087 at * 3 (S.D.N.Y. Feb. 4, 2003), aff'd by, 101 Fed.Appx. 365 (2d Cir. 2004). In other words, "[c]omplete exhaustion to the highest level is required for each claim." *Singh v. Goord*, 520 F.Supp.2d 487, 495 (S.D.N.Y. 2007) [internal citations omitted]. "Moreover, a claim must be completely exhausted prior to commencing suit. It is insufficient to take only limited steps towards exhaustion before commencing suit, or even to exhaust a claim entirely during the pendency of the case." *Schwartz v. Dennison*,

518 F.Supp.2d 560, 568 (S.D.N.Y. 2007), aff'd, 339 Fed. Appx. 28 (2d Cir. 2009).

**Plaintiff's Response:** Although generally a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court only after exhausting administrative procedures, *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), here, Plaintiff was thwarted in his attempt to exhaust his administrative remedies when he requested a grievance form from multiple OCCF staff members, yet was denied each time. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Courts in this Circuit have held that "an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003); *see also Thomas v. New York State DOCS*, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, 2000 WL 274184, at *3 (S.D.N.Y. Mar.13, 2000); *Preslar v. Dr. Tan*, 2003 WL 553273, at *3 (W.D.N.Y. Feb. 6, 2003).

Further, Plaintiff was told repeatedly that removal from his trustee positions and his housing unit transfer were not issues subject to the grievance procedure. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Nonexhaustion does not bar a claim "where a plaintiff has been led to believe that administrative remedies were unavailable." *Rivera v. Goord*, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003).

Moreover, the PLRA's exhaustion requirement is an affirmative defense, and Defendants "bear[] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

4. The PLRA's mandatory exhaustion requirement is only excused when the administrative remedies at issue were unavailable to the inmate. *Ross v. Blake*, 136 S.Ct. 1850, 1858

(2016). However, a "denial of grievance forms does not, in itself, make administrative remedies unavailable." *Evans v. Aramark Food*, (No. 14 CV 6469 (NSR)), 2016 WL 1746060, at * 3 (S.D.N.Y. April 28, 2016). *See Silvagnoli v. Figueroa*, (No. 12 Civ. 7761 (AT)), 2014 WL 4160213, at * 4 (S.D.N.Y. Aug. 19, 2014 ("[Prison staff's alleged [repeated] refusal to give Plaintiff a grievance form does not render administrative remedies unavailable either, "[d]enial of [grievance] forms . . . does not itself constitute a denial of remedies.'") (quoting *Indelicato v. Suarez*, 207 F.Supp.2d 216, 219 (S.D.N.Y. 2002)); *Armand v. Simonson*, (No. 12-CV-7709 (KMK)), 2016 WL 1257972, at * 22 (S.D.N.Y. Mar. 30, 2016) ("[N]o argument could be made that administrative remedies were not available to Plaintiff . . . by virtue of her allegation that . . . she was ignored by correctional staff in asking for supplies and grievance forms . . ." ) (alterations omitted)).

**Plaintiff's Response:** Although generally a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court only after exhausting administrative procedures, *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), here, Plaintiff was thwarted in his attempt to exhaust his administrative remedies when he requested a grievance form from multiple OCCF staff members, yet was denied each time. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Courts in this Circuit have held that "an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003); *see also Thomas v. New York State DOCS*, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, 2000 WL 274184, at *3 (S.D.N.Y. Mar.13, 2000); *Preslar v. Dr. Tan*, 2003 WL 553273, at *3 (W.D.N.Y. Feb. 6, 2003).

Further, Plaintiff was told repeatedly that removal from his trustee positions and his housing unit transfer were not issues subject to the grievance procedure. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Nonexhaustion does not bar a claim "where a plaintiff has been led to believe that administrative remedies were unavailable." *Rivera v. Goord*, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003).

Moreover, the PLRA's exhaustion requirement is an affirmative defense, and Defendants "bear[] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

5. The OCCF has a multi-step grievance procedure that is detailed in the Inmate Handbook. The procedure is reviewed with all inmates, including Plaintiff, upon their entry into OCCF.

**Plaintiff's Response:** Plaintiff's only avenue to submit a grievance was to "request and . . . receive a grievance form by the end of the shift." Colby Aff., Ex. 1 at 48 (ECF 78-1). There was no alternative avenue for Plaintiff to submit a grievance. Colby Dep. 87:2–12. Plaintiff notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

6. Sgt. Colby, as the Grievance Coordinator, reviews all grievances and oversees any resulting investigations.

**Plaintiff's Response:** Sgt. Colby does not review all grievances permitted by OCCF's grievance policies. Colby Dep. 51:8-52:8. Plaintiff further notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

7. OCCF records confirm that Plaintiff only submitted one grievance during his incarceration at OCCF in 2022, and said grievance was regarding the jail's COVID-19 protocol, not Sgt.

Gessner.

**Plaintiff's Response:**  Plaintiff notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

Additionally, although generally a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court only after exhausting administrative procedures, *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), here, Plaintiff was thwarted in his attempt to exhaust his administrative remedies when he requested a grievance form from multiple OCCF staff members, yet was denied each time. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Courts in this Circuit have held that "an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003); *see also Thomas v. New York State DOCS*, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, 2000 WL 274184, at *3 (S.D.N.Y. Mar.13, 2000); *Preslar v. Dr. Tan*, 2003 WL 553273, at *3 (W.D.N.Y. Feb. 6, 2003).

Further, Plaintiff was told repeatedly that removal from his trustee positions and his housing unit transfer were not issues subject to the grievance procedure. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Nonexhaustion does not bar a claim "where a plaintiff has been led to believe that administrative remedies were unavailable." *Rivera v. Goord*, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003).

Moreover, the PLRA's exhaustion requirement is an affirmative defense, and Defendants "bear[] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

8. There is no particular grievance form, although an inmate could ask for the facility-issued form.

   **Plaintiff's Response:** Plaintiff's only avenue to submit a grievance as detailed in the Inmate Handbook was to "request and . . . receive a grievance form by the end of the shift." Colby Aff., Ex. 1 at 48 (ECF 78-1). There was no alternative avenue for Plaintiff to submit a grievance. Colby Dep. 87:2–12. Plaintiff notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

9. Any grievance received in the grievance box would have been reviewed and investigated by Sgt. Colby.

   **Plaintiff's Response:** Sgt. Colby would only have been able to review and investigate grievances that were received. This statement is irrelevant in light of how Mr. Pearson was prevented from utilizing the OCCF grievance procedure. Plaintiff notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

10. As such, the evidence in this case establishes that Mr. Pearson could have at any time availed himself of the grievance procedure at OCCF. He failed to do so entirely and thus his claims should be barred under the PLRA.

    **Plaintiff's Response:** Although generally a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court only after exhausting administrative procedures, *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), here, Plaintiff was thwarted in his attempt to exhaust his administrative remedies when he requested a grievance form from multiple OCCF staff members, yet was denied each time. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Courts in this Circuit have held that "an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where

officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003); *see also Thomas v. New York State DOCS*, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, 2000 WL 274184, at *3 (S.D.N.Y. Mar.13, 2000); *Preslar v. Dr. Tan*, 2003 WL 553273, at *3 (W.D.N.Y. Feb. 6, 2003).

Further, Plaintiff was told repeatedly that removal from his trustee positions and his housing unit transfer were not issues subject to the grievance procedure. *See* Complaint at 8 (ECF 1); *see also* Pearson Aff. ¶ 28. Nonexhaustion does not bar a claim "where a plaintiff has been led to believe that administrative remedies were unavailable." *Rivera v. Goord*, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003).

Moreover, the PLRA's exhaustion requirement is an affirmative defense, and Defendants "bear[] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

11. Moreover, a complaint submitted to the New York State Commission of Correction does not satisfy completion of OCCF's grievance procedure. Even if it did, the record is clear that the only complaint about Sgt. Gessner to the Commission of Correction during this time period was in June 5, 2022 – well before the allegations of retaliation presently before the Court.

**Plaintiff's Response:** Whether a complaint submitted to the New York State Commission of Correction satisfies completion of OCCF's grievance procedure is question of fact that requires development at trial. Further, Mr. Pearson was thwarted in his attempt to exhaust his administrative remedies, as discussed supra.

**CONCLUSION TWO:**

**There has been no evidence proffered by Plaintiff to establish the existence of any unconstitutional custom, policy or practice. Thus, any claim against the County of Orange or Sgt. Gessner in his official capacity must be resolved in favor of the Defendants.**

1. Under 42 U.S.C. §1983, a local government may be held liable for the constitutional torts committed by its officials, according to a municipal policy, practice or custom. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690-91 (1978). Pursuant to *Monell* and its progeny, in order to establish a §1983 claim against a defendant in his official capacity, a plaintiff must identify the unconstitutional policy, practice or custom that caused his claimed injury. *See Bd. Of Cty. Com'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997). "A plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervisory policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Tieman v. City of Newburgh,* (No. 13-CV-4178 (KMK)), 2015 WL 1379652 at *13 (S.D.N.Y. March 26, 2015) (quoting *Brandon v. City of New York,* 705 Supp. 2d 261, 276-277 (S.D.N.Y. 2010)). Moreover "a plaintiff also must establish a causal link between the municipality's policy, custom or practice and the alleged constitutional injury." *Tieman, supra* at *13.

2. Here, there is no evidence of any official policy of the OCCF, and thereby the County, to retaliate against inmates by removing them from trustee positions, calling them names or transferring their housing unit. Indeed, the operative complaint never mentions or identifies a policy.

3. In addition, Sgt. Gessner was not the final policymaker with regard to budgetary decisions or housing transfers. Instead, the evidence shows that Sgt. Gessner was merely following OCCF policy with regard to making sure the amount being paid to the trustees did not exceed the dollar amount set by higher ranked administrative officials.

4. Here, the decision to move Plaintiff to the D2 Housing Unit was no decision at all. Rather, upon receiving medical clearance, Sgt. Gessner followed protocol by signing off on Plaintiff's transfer to a permanent housing unit (*i.e.*, not the B1 Housing Unit).

5. There is only one maximum-security unit in OCCF, which is the D-2 unit. Given his disciplinary history and recent contraband IMR, the Classifications Unit decided to move Plaintiff to the D2 Housing Unit. Thus, by signing off on the Classifications Unit's decision to move Plaintiff to the D2 Housing Unit, Sgt. Gessner was acting reasonably under the circumstances. *See Raphael v. Cnty. of Nassau*, 387 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) ("[t]he mere fact that one of the alleged state actors was a Sergeant does not by itself make him a 'policymaker' for purposes of municipal liability").

6. The evidence shows that the actual decision to move Plaintiff to the D2 Housing Unit, as opposed to another unit at OCCF, was completed by the Classifications Unit.

7. There is also no evidence of a widespread and consistent policy or custom in this case. *See generally Brandon v. City of New York*, 705 F.Supp.2d 261, 276-77 (S.D.N.Y. 2010). Instead, Plaintiff merely points to his own experiences to try and form a basis of liability

against the County. But "[a]n inmate cannot plausibly state a widespread practice simply by alleging his own experience and then extrapolating to the entire jail population." *Kirton v. Doe*, No. 20-CV-10860 (KMK), 2023 WL 2586279, at \*9 (S.D.N.Y. Mar. 21, 2023). Accordingly, no *Monell* liability may be found under the third category of liability either.

8. Lastly, there is no evidence to establish *Monell* liability based upon a failure to train. Significantly, "[t]he elements of an identified training deficiency and a close causal relationship, which together require the plaintiff[] to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004). There is no evidence identifying any training deficiency in this case, thus any claim under this category must also fail.

9. Based on the above, there is no evidence in the record that could support a claim for municipal liability. Moreover, there is no underlying constitutional violation by any County actor that could extend *Monell* liability to the County. Thus, a finding should be entered in favor of Defendants County of Orange and Sergeant Nicholas Gessner in his official capacity.

**CONCLUSION THREE:**

**The evidence does not support a finding that Sgt. Gessner retaliated against Plaintiff; rather, the evidence shows legitimate non-retaliatory reasons for (i) removing Plaintiff from his trustee positions; and (ii) moving Plaintiff to the D2 Housing Unit that would have**

**occurred regardless of the prior 2021 litigation. Moreover, the allegations of verbal abuse are not actionable as a matter of law.**

1. "Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims 'with skepticism and particular care'". *Thaxton v. A. Simmons,* 2012 WL 360104 at *7 (N.D.N.Y. Jan. 5, 2012) (*quoting Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 2002). This is true "because virtually any adverse action taken against a prisoner by a prison official –even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*.

   **Plaintiff's Response:** Respectfully refer to the Court for a ruling as to the applicable law in this case.

2. "To establish a First Amendment retaliation claim, a plaintiff must show that "(1) his conduct was protected by the First Amendment, and (2) such conduct prompted or substantially caused defendant's action." *Lashley v. Wakefield*, 483 F. Supp. 2d 297, 300 (W.D.N.Y. 2007) [internal citations omitted]. To prevail on a First Amendment retaliation claim, Plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that defendant took adverse action against plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker,* 239 F.3d at 492 [2d Cir. 2001]). "Once plaintiff makes these showings, defendants can avoid liability by demonstrating that they would have taken the same adverse actions even if plaintiff had never engaged in the protected conduct." *Spavone v. Fischer*, No. 10 CIV. 9427 RJH THK, 2012 WL 360289, at *3 (S.D.N.Y. Feb. 3, 2012). "Lastly, even if the plaintiff shows that the defendant was

47

motivated at least in part by retaliatory animus and the defendant *fails* to prove that, absent that retaliatory animus, he would have taken the same action, the plaintiff must still demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Id*. [internal citations omitted].

**Plaintiff's Response:** Respectfully refer to the Court for a ruling as to the applicable law in this case.

3.  The filing of federal lawsuit by an inmate-plaintiff is a protected activity. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) [internal citation omitted].

**Plaintiff's Response:** Admit.

4.  "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) [*quoting Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)].

**Plaintiff's Response:** Admit.

5.  "Allegations of adverse actions alone, however, are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id*. "The Second Circuit has found that a causal connection may be established by the temporal proximity between an inmate's lawsuit and an adverse action, evidence of the inmate's prior good behavior, and vindication in a proceeding arising from the alleged retaliation." *Spavone v. Fischer*, No. 10 CIV. 9427 RJH THK, 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012). Courts are allowed "to

48

exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Id*. [internal citations and quotations omitted].

**Plaintiff's Response:** The Second Circuit does not "draw[] a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation" between the exercise of a federal constitutional right and an allegedly retaliatory action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). For example, the court previously held that abuse a month after receipt of deposition notices could be retaliation for initiation of a lawsuit more than a year earlier. *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 446–47 (2d Cir. 1999); *see also Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between U.S. Equal Employment Opportunity Commission complaint and retaliatory action suggested a causal relationship). Defendants' attempted "nail[ing] down the elusive outer limit" beyond which a temporal relationship is too attenuated to establish a causal relationship should be rejected. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).

6. It is well-settled that "[n]on-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim." *Ross v. Westchester Cnty. Jail*, (No. 10 Civ. 3937 (DLC)), 2012 WL 86467, at * 7 (S.D.N.Y. Jan. 11, 2012) (collecting cases); *Davis*, *supra* at 353 (2d Cir. 2003) (sarcastic comments do not constitute retaliatory action); see also *Roundtree v. City of New York*, No. 15CV8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) ("the mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation and is not cognizable under" § 1983).

49

**Plaintiff's Response:** To constitute "adverse action," conduct must be of the "type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Lt. Gessner's grant and subsequent revocation of Plaintiff's trustee positions, movement to a housing unit that posed a risk of harm to Plaintiff, and use of derogatory names is "adverse action." *See Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (allowing a combination of smaller incidents to form the basis of a constitutional retaliation claim once reaching a critical mass).

7. Prison officials have broad discretion to transfer prisoners. *Montanye v. Haymes,* 427 U.S. 236, 243 (1976); *Meachum v. Fano,* 427 U.S. 215, 228 (1976). However, transfers may not occur solely in retaliation for the exercise of constitutional rights. *See generally Tolliver v. Jordan*, No. 19-CV-11823 (PMH), 2021 WL 2741728, at *6 (S.D.N.Y. July 1, 2021).

   **Plaintiff's Response:** Respectfully refer to the Court for a ruling as to the applicable law in this case.

8. Preliminarily, it is well-settled that a prisoner in a New York State correctional facility has no constitutionally protected property interest in a particular job assignment. *See Johnson v. Rowley,* 569 F.3d 40, 44 (2d Cir. 2009) (noting that a prisoner in a New York State correctional facility does not have a liberty interest in a particular job assignment); *Frazier v. Coughlin,* 81 F.3d 313, 318 (2d Cir. 1996); *Fountain v. City of New York,* 1986 WL 14919 at *2 (S.D.N.Y. Dec. 22, 1986) *Cooper v. Smith,* 63 N.Y.2d 615, 616 (1984) (New York does not provide a prisoner with "any statutory, regulatory or precedential right to his prison job"). Even so, any claim of retaliation based upon removal from certain trustee positions fails for multiple reasons.

50

**Plaintiff's Response:** Respectfully refer to the Court for a ruling as to the applicable law in this case. Deny as to failure of the claim of retaliation based upon removal from certain trustee positions.

9. First, the evidence does not and cannot establish the requisite causal connection. The evidence in this case utterly refutes any perceived inference that the initial lawsuit by Plaintiff played any role in the decision to remove Plaintiff from his trustee positions. Any potential causal connection in this case was broken when it was established that Sgt. Gessner did not select Plaintiff as a trustee until well after the initial lawsuit commenced and the Notice of Appeal was filed. Moreover, there was an entire incarceration period between the filing of the first lawsuit against Sgt. Gessner and the incarceration period during which the allegations on this action allegedly arose.

**Plaintiff's Response:** The Second Circuit does not "draw[] a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation" between the exercise of a federal constitutional right and an allegedly retaliatory action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). For example, the court previously held that abuse a month after receipt of deposition notices could be retaliation for initiation of a lawsuit more than a year earlier. *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 446–47 (2d Cir. 1999); *see also Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between U.S. Equal Employment Opportunity Commission complaint and retaliatory action suggested a causal relationship). Defendants' attempted "nail[ing] down the elusive outer limit" beyond which a temporal relationship is too attenuated to establish a causal relationship should be

51

rejected. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).

10. Here, the evidence shows that the legitimate non-retaliatory reasons by Sgt. Gessner for removing Plaintiff, along with other trustees in his housing unit, from certain positions was based upon budgetary concerns. Moreover, the decision to remove Plaintiff from his final position as Paint Detail was necessitated when Plaintiff displayed suicidal behavior and was placed on a One-to-One watch.

   **Plaintiff's Response:** Deny. The evidence does not support Defendants' position regarding Sgt. Gessner's non-retaliatory reasons for removing Plaintiff from his trustee positions.

11. There is no temporal proximity as the events in question occurred approximately 15 months after the initial lawsuit was filed. Moreover, the evidence suggests a history of disruptive behavior, not good behavior, on behalf of Plaintiff, and further there is no evidence of Plaintiff's vindication in any later proceeding. Lastly, even if Plaintiff could prove some retaliatory animus, which he cannot, the evidence establishes that Sgt. Gessner would have made the decision to remove Plaintiff from his trustee positions regardless.

   **Plaintiff's Response:** The Second Circuit does not "draw[] a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation" between the exercise of a federal constitutional right and an allegedly retaliatory action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). For example, the court previously held that abuse a month after receipt of deposition notices could be retaliation for initiation of a lawsuit more than a year earlier. *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 446–47 (2d Cir. 1999); *see also Grant v. Bethlehem*

*Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between U.S. Equal Employment Opportunity Commission complaint and retaliatory action suggested a causal relationship). Defendants' attempted "nail[ing] down the elusive outer limit" beyond which a temporal relationship is too attenuated to establish a causal relationship should be rejected. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)

Additionally, Defendants' own evidence contradicts their statement that there is not evidence of Plaintiff's good behavior. *See* Defendants' Proposed Findings of Fact ¶ 19 ("After a few weeks of [Mr. Pearson] exhibiting more acceptable behavior . . . ."); *see also* Gessner Dep. 67:4-21; Gessner Aff. ¶ 6 (discussing the same). Further, the evidence does not support Defendants' position that Sgt. Gessner would have removed Plaintiff from his trustee positions if not for his retaliatory animus.

12. Any claim of retaliation based upon Sgt. Gessner allegedly calling Plaintiff names like "princess" and "little girl" also fails because such actions are not adverse actions as a matter of law.

**Plaintiff's Response:** To constitute "adverse action," conduct must be of the "type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Lt. Gessner's grant and subsequent revocation of Plaintiff's trustee positions, movement to a housing unit that posed a risk of harm to Plaintiff, and use of derogatory names is "adverse action." *See Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (allowing a combination of smaller incidents to form the basis of a constitutional retaliation claim once reaching a critical mass)..

13. Finally, any claim of retaliation based upon the housing transfer also fails because the evidence shows Sgt. Gessner was following protocol when he merely signed a form that moved Plaintiff to the maximum-security unit (D-2) due to his recent contraband infraction. The decision itself was not by Sgt. Gessner such that he could be held liable for same. Moreover, although temporarily placed in the intake unit so he could complete his contact isolation, Plaintiff could not permanently stay in the intake unit. His move to D-2 was necessary and appropriate, and, as previously established, the evidence shows it was not causally connected to the initial lawsuit.

**Plaintiff's Response:** The Second Circuit does not "draw[] a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation" between the exercise of a federal constitutional right and an allegedly retaliatory action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). For example, the court previously held that abuse a month after receipt of deposition notices could be retaliation for initiation of a lawsuit more than a year earlier. *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 446–47 (2d Cir. 1999); *see also Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between U.S. Equal Employment Opportunity Commission complaint and retaliatory action suggested a causal relationship). Defendants' attempted "nail[ing] down the elusive outer limit" beyond which a temporal relationship is too attenuated to establish a causal relationship should be rejected. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).

**CONCLUSION FOUR:**

**Sgt. Gessner is entitled to qualified immunity, and thus he cannot be found liable in this case.**

1. "A government official may be entitled to immunity if (1) his conduct did not violate clearly established law, or (2) it was objectively reasonable for that official to believe that the action he took did not violate the law." *Fredricks v. Parrilla*, No. 20CV5738ATJLC, 2022 WL 3053654, at *12 (S.D.N.Y. Aug. 3, 2022) [internal citations omitted]. "These protections balance two important interest – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Baltas v. Chapdelaine*, No. 22-2813-CV, 2025 WL 2524458, at *4 (2d Cir. Sept. 3, 2025) [internal citations and quotations omitted].

   **Plaintiff's Response:** A state actor charged under § 1983 with violating a plaintiff's constitutional rights is entitled to have the action dismissed on the basis of qualified immunity only if, at the time of the challenged conduct, there was no "clearly established law" that such conduct constituted a constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The need for "clearly established" law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful. *See Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012); *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997). The caselaw regarding retaliation in violation of the First Amendment under § 1983 was clearly established at the time of the retaliatory conduct. *See Espinal*, 558 F.3d at 128 (2d Cir. 2009) (outlining requirements for a prisoner to demonstrate retaliation based on adverse actions taken by prison officials).

2. When evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable officer in Defendant's position would have believed his or her conduct would violate the asserted constitutional right. *Gunn v. Malani*, No. 20-CV-2681 (KMK), 2023 WL 2664805, at *8 (S.D.N.Y. Mar. 28, 2023). Moreover, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id*. [internal citations omitted].

   **Plaintiff's Response:** A state actor charged under § 1983 with violating a plaintiff's constitutional rights is entitled to have the action dismissed on the basis of qualified immunity only if, at the time of the challenged conduct, there was no "clearly established law" that such conduct constituted a constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The need for "clearly established" law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful. *See Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012); *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997). The caselaw regarding retaliation in violation of the First Amendment under § 1983 was clearly established at the time of the retaliatory conduct. *See Espinal*, 558 F.3d at 128 (2d Cir. 2009) (outlining requirements for a prisoner to demonstrate retaliation based on adverse actions taken by prison officials).

3. The evidence in this case establishes that it was objectively reasonable for Sgt. Gessner to believe that his actions of removing Plaintiff from his trustee positions and signing off on a housing transfer did not violate the law. Here, Plaintiff did not have these trustee positions at the time he commenced the initial lawsuit against Sgt. Gessner. Plaintiff did not himself request to be a trustee. Rather, Sgt. Gessner had staff approach Plaintiff to be a trustee in

an attempt to reward him for his "good" behavior and give him a reason and opportunity to continue the more positive behavior he was exhibiting. But for Sgt. Gessner, Plaintiff would have never been selected for his trustee positions. Significantly, Sgt. Gessner knew about Plaintiff's past lawsuit when he approved Plaintiff for the positions. Thus, Sgt. Gessner did not ever have the *mens rea* necessary to be retaliating against Plaintiff.

**Plaintiff's Response:** The evidence does not support Defendants' claim that "Sgt. Gessner had staff approach Plaintiff to be a trustee," nor that "[b]ut for Sgt. Gessner, Plaintiff would have never been selected for his trustee positions." It was Sgt. Nehrkorn who nominated Plaintiff to his trustee status. *See* Joint Ex. 5. Plaintiff further notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

4.  Based upon the budgetary goals of the Sheriff's Office, Sgt. Gessner had a legitimate reason to remove Plaintiff from his various trustee positions. Sgt. Gessner's intention was to leave Plaintiff with a position less prone to being cut for budgetary reasons, thus leaving him with the Paint Detail position. However, once Plaintiff went on a One-to-One Suicide Watch, Sgt. Gessner had no option but to remove Plaintiff from this remaining trustee position. Based thereon, Sgt. Gessner could have reasonably believed that the decision to remove Plaintiff from certain trustee positions, ones that he gave him, did not violate clearly established law.

**Plaintiff's Response:** The evidence does not support Defendants' justifications relying upon budgetary goals. Mr. Pearson's removal did not reduce the trustee payroll budget and that another inmate was added to trustee positions concurrent with Mr. Pearson's removal. With respect to moving Mr. Pearson to D-2 unit, Mr. Pearson asked why he was being moved, Lt. Gessner replied that Mr. Pearson was acting like a "little girl" by maintaining

57

the Excessive Force Lawsuit against him. Plaintiff further denies the other facts stated in this paragraph, and notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

5. Even assuming that the name calling is true, a point that the Defendants do not concede, such actions are not adverse for the purpose of retaliation claims. Thus, Sgt. Gessner cannot be found to have clearly violated any law with regard to any name-calling.

   **Plaintiff's Response:** A combination of small incidents can form the basis of a constitutional claim once reaching a critical mass sufficient to chill the exercise of First Amendment rights. See *Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024).

6. Lastly, Plaintiff had to be transferred to the D-2 housing unit because Plaintiff was removed from contact isolation and had to be transferred to a permanent unit. Since he was recently found with contraband in his cell, Sgt. Gessner properly signed off on moving Plaintiff to the maximum-security unit, which is D-2 at OCCF. Moreover, the decision to move Plaintiff to D-2 was that by the Classifications Unit, not Sgt. Gessner. Thus, Sgt. Gessner did not violate any clearly established laws in this regard, and it was objectively reasonable for him to believe no law was being violated.

   **Plaintiff's Response:** The evidence does not support Defendants' claim that Sgt. Gessner merely "signed off" on Plaintiff's transfer to the D-2 housing unit and that it was not his decision to initiate the move. Sgt. Gessner is listed as the "Requesting Officer" on the "Inmate Housing Unit Relocation Form" moving Plaintiff to the D-2 housing unit. Joint Ex. 11. Plaintiff further notes that this is a proposed finding of fact improperly included in Defendants' proposed conclusions of law.

7. Based thereon, the Court may find that qualified immunity applies to Sgt. Gessner's

actions, necessitating a finding in favor of the Defendants.

**Plaintiff's Response:** Deny for the reasons discussed above.


Dated: Goshen, New York
      September 12, 2025

                                  Respectfully submitted,

STEPHANIE T. MIDLER
Assistant County Attorney
Richard B. Golden
County Attorney for Orange County
Attorney for the County Defendants
255-275 Main Street
Goshen, NY 10924
(845) 291-3150